IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| SIRIUS COMPUTER SOLUTIONS, INC. § | | |
| § | | |
| *Plaintiff*, § | | |
| § | | |
| V. § | | Civil Action No.  5:18-cv-1201 |
| § | | |
| ROELOF NYDAM. § | | |
| § | | |
| *Defendant*. § | | |

---

**PLAINTIFF'S ORIGINAL COMPLAINT**

---

Plaintiff, Sirius Computer Solutions, Inc. ("Sirius"), files this action against its former employee, Defendant Roelof Nydam ("Nydam") for breach of non-solicitation and confidentiality agreements; breaches of fiduciary duty, duty of confidentiality and duty of loyalty; tortious interference with contractual relations and/or prospective business advantage; and conversion.  Sirius would respectfully show the Court as follows:

## I.
## INTRODUCTION

1. Defendant Nydam, a former upper level sales employee for Sirius, has blatantly ignored his contractual and common law obligations subsequent to his voluntary resignation from Sirius.  In May 2018, Nydam submitted his resignation and took a sales representative position with a direct competitor of Sirius, Presidio, Inc. ("Presidio").   Sirius learned that after leaving Sirius, Nydam solicited and provided services to clients with whom he worked while with Sirius, despite his non-solicitation agreement with Sirius.  Sirius also learned that while still employed by Sirius, Nydam wrongfully removed copies of Sirius' customer files and other confidential and proprietary information belonging to Sirius despite the contractual and common

1

law confidentiality obligations he owes to Sirius. Nydam' conduct exposes Sirius to substantial risk of further imminent injury in the absence of injunctive relief; Sirius will file an application for injunctive relief in which Sirius asks this Court to issue a preliminary injunction to prevent Nydam from continuing his unlawful conduct. Sirius seeks, ultimately, a permanent injunction enjoining Nydam from any further unlawful conduct. Sirius also asks this Court to award it any and all damages already sustained from Nydam's unlawful conduct.

## II.
## PARTIES

2. Sirius is a Texas corporation with its corporate headquarters located in San Antonio, Texas at 10100 Reunion Place, Suite 500, San Antonio, Texas 78216.

3. Defendant Nydam is an individual residing in Atlanta, Georgia who may be served with process at his residence, 2399 Dunwoody Hollow Drive, Atlanta, Georgia 30360.

## III.
## VENUE, JURISDICTION, AND CHOICE OF LAW

4. This Court has original jurisdiction of this matter under diversity jurisdiction, 28 U.S.C.A. §1332(a)(1), because the controversy is between citizens of different States and the amount in controversy exceeds the minimum jurisdictional requirements of this Court. In addition to the injunctive relief sought, Sirius seeks monetary damages in excess of $75,000.

5. Venue is proper in Bexar County, Texas, pursuant to the agreement between the parties. Nydam entered into the Service Unit Appreciation Plan (the "Service Plan") with Sirius on or about November 1, 2017. The Plan provides in Paragraph 12(h) for exclusive jurisdiction of any dispute in San Antonio, Texas or the federal courts in Bexar County, Texas. In Paragraph 12(h) of the Service Plan, Nydam also expressly waived any argument that San Antonio and Bexar County, Texas would be an inconvenient forum.

6.      Nydam also agreed that Delaware law would apply to all determinations made and action taken with respect to the Plan.

## IV.
## BACKGROUND FACTS

7.      Sirius is a national IT solutions integrator of technology-based business solutions headquartered in San Antonio, Texas. Sirius maintains sales locations throughout the United States.

8.      Beginning in 2008, Nydam was an employee of Forsythe Technology, Inc. ("Forsythe"). As an employee of Forsythe, he entered into a Confidentiality and Proprietary Rights Agreement: Sales ("the Forsythe Agreement") in July 2008.

9.      On October 31, 2017, Sirius acquired Forsythe in a stock purchase transaction. Through Sirius' acquisition of Forsythe, the Forsythe Agreement remained in place and enforceable by Sirius.

10.     The Forsythe Agreement defines Confidential Information as follows:

b)      For purposes of this Agreement, "Confidential Information" shall mean any and all information (oral or written), not generally known or available to the trade or industry without restriction, relating to the Company, any other member of the Affiliated Group or any person controlling, controlled by, or under common control with the Company or any other member of the Affiliated Group or any of its activities, including, but not limited to, information relating to: technology, engineering, research, and/or development activities and information; processes, methods personnel; data processing (including, but not limited to, software, programming design and development materials, documentation, and hardware and data base information); financial information; products; identity and description of materials and services used; purchasing; costs and pricing; customers and prospects; advertising, promotion and marketing; as well as information provided by any third party to the Company or any other member of the Affiliated Group.

11.     On November 1, 2017, Nydam signed a Letter Agreement with Sirius pursuant to which he obtained an incentive award consisting of performance units and service units (collectively, the incentive units") granted under Sirius' Performance Unit Appreciation Plan (the

"Performance Plan") and Service Unit Appreciation Plan (the "Service Plan") (collectively the "Plans"). As a condition of his receipt of the incentive units, he agreed to the restrictive covenants set forth in these plans.

12. The restrictive covenants in both Plans are identical. Both Plans included a noncompetition agreement; however, in the Letter Agreement that incorporated the Plans, Sirius expressly waived the non-competition covenants.

13. Paragraph 9 of the Service Plan[1] provides, in pertinent part, as follows:

**<u>Restrictive Covenants</u>:**

> (a) Noncompetition; Confidentiality and Nonsolicitation. Other than as provided in Section 9(h), the covenants and restrictions contained in this Section 9 are in addition to, and not in lieu of, any covenants or restrictions applying pursuant to any employment, severance, consulting services or other agreement to which any Participant to whom Service Units are awarded is a party, unless such agreement expressly provides that the provisions thereof supersede this Section 9; provided, however, that the Participant will not be deemed to be in breach of a provision of this Section 9 by reason of any act or occurrence that expressly does not constitute a violation of the noncompetition and nonsolicitation provisions set forth in an employment agreement with the Participant's Employer or any of its Affiliates, including by reason of an express exclusion therefrom; and provided further that the provisions in this Section 9 shall be subject to any express amendment, modification or waiver set forth in the Award Agreement.
>
> …
>
> (c) Confidentiality. All materials and information obtained by a Participant, together with all other confidential or proprietary information of Parent and its subsidiaries (such materials and information collectively, the "Confidential Information"), shall be kept confidential, shall be used only in the good faith performance of the Participant's duties to the Participant's Employer and shall not be disclosed to any third party except: (i) information which is or becomes publicly available (other than as a result of disclosure by the Participant in violation hereof or a third party violation of such third party's contractual, legal or fiduciary obligation to Parent or any of its subsidiaries); (ii) information which is independently developed, discovered or arrived at by the Participant without use of Confidential Information; (iii) if applicable, to the Participant's existing or

---

[1] The identical restrictive covenants are included as Section 8 of the Performance Unit Plan.

prospective equity holders, directors, officers, trustees, partners, employees, agents, accountants, representatives and professional consultants on a need-to-know-basis; (iv) in any report, statement, testimony or other submission to any governmental authority having or claiming to have jurisdiction over the Participant; (v) in order to comply with any law, rule, regulation or order applicable to, or in response to any summons, subpoena or other legal process or formal or informal investigative demand issued to such recipient in the course of any litigation, investigation or administrative proceeding, or (vi) for the benefit of Parent and its subsidiaries and in accordance with any restrictions placed on its disclosure by Parent or the Participant's Employer. In the event that any Participant (or person to whom the Participant has made a disclosure permitted under this Section 9) becomes legally compelled by deposition, interrogatory, request for documents, subpoena, civil investigative demand or similar judicial or administrative process to disclose any Confidential Information, the disclosing party shall provide the Company with prompt prior written notice of such requirement and shall cooperate reasonably with the Company, at the Company's expense, to obtain a protective order or similar remedy to cause such Confidential Information not to be disclosed, including interposing all available objections thereto, such as objections based on settlement privilege. In the event that such protective order or other similar remedy is not obtained, the disclosing party shall furnish only that portion of such Confidential Information that has been legally compelled to be furnished.

(d) Nonsolicitation of Employees. During the Restricted Period, the Participant agrees that the Participant will not, other than in the good faith performance of the Participant's duties to his or her Employer, directly or indirectly induce any employee of Parent or any of its subsidiaries to terminate employment with such entity, and the Participant agrees further to not directly or indirectly, either individually or as owner, agent, employee, consultant or otherwise, employ, offer employment to or otherwise interfere with the employment relationship of Parent or any of its subsidiaries with any person who is or was employed by Parent or such subsidiary unless, at the time of such employment, offer or other interference, such person shall have ceased to be employed by such entity for a period of at least six months, provided that, nothing in this Section 10(d) shall preclude the Participant from placing advertisements during the Restricted Period in periodicals of general circulation soliciting persons for employment.

(e) Nonsolicitation of Clients. During the Restricted Period, the Participant agrees that the Participant will not solicit or otherwise attempt to establish for himself or herself or any other Person any business relationship with any Person which is, or during the 12-month period preceding any date of determination was, a customer, client or distributor of Parent or any of its Subsidiaries.

(f) Injunctive Relief with Respect to Covenants. Each Participant acknowledges and agrees that the covenants and obligations in this Section 9 with respect to noncompetition, nonsolicitation and confidentiality, as the case may be, set forth herein relate to special, unique and extraordinary matters and that a

violation or threatened violation of any of the terms of such covenants or obligations will cause Parent and its subsidiaries irreparable injury for which adequate remedies are not available at law. Therefore, each Participant agrees, to the fullest extent permitted by applicable law, that the Company shall be entitled to an injunction, restraining order or such other equitable relief (without the requirement to post bond) restraining the Participant from committing any violation of the covenants or obligations contained in this Section 9. These injunctive remedies are cumulative and are in addition to any other rights and remedies Parent or any of its subsidiaries may have at law or in equity. In connection with the foregoing provisions of this Section 9, the Participant represents that his or her economic means and circumstances are such that such provisions will not prevent the Participant from providing for the Participant's and his or her family on a basis satisfactory to the Participant.

…

14. The Forsythe Agreement was incorporated into Nydam's agreements with Sirius through Paragraph 9(a) of the Service Plan. The Forsythe Agreement defines confidential information, in pertinent part, as:

"Confidential Information" shall mean any and all information (oral or written), not generally known or available to the trade or industry … relating to: technology, engineering, research, and/or development activities and information; processes , methods personnel; data processing (including but not limited to , software, programming design and development materials, documentation, and hardware and data base information); financial information; products; identity and description of materials and services used; purchasing; costs and pricing; customers and prospects; advertising, promotion and marketing; as well as information provided by any third party to the Company …

15. Sirius' business activities are technology sales focused, including, but not limited to, contacting prospective and existing customers, providing proposals/quotations to customers, and maintaining customer relationships. Sirius' business is highly competitive. As a sales representative, Nydam was privy to confidential and proprietary information belonging to Sirius, including but not limited to, customer information and records (including customer files and network information, internal or customer computer configurations, customer-specific buying needs, requirements or habits, customer payment practices or histories, potential future needs,

and lists of contact information), pricing and profit margin information, marketing information, vendor lists and vendor pricing, confidential financial data, training and training programs, billing practices, implementation methodologies, marketing plans and strategies, growth strategies, transactional terms and conditions, compensation plans, and discussions regarding competitors and customers.

16. Nydam was responsible for soliciting clients for Sirius, which included identifying leads, contacting those leads, formulating proposals based on Sirius' confidential pricing methodology, and preparing presentations for Sirius' clients and/or potential clients, as well as serving as the face-to-face contact for such customers for services and solutions purchased. Nydam was also charged with maintaining Sirius' relationships with existing clients.

17. At all relevant times, Nydam was expected to and did enter sales information into a confidential, restricted access data base maintained by Sirius. Sirius used specific software for gathering, organizing and preserving its clients' historical needs, practices, contacts and future plans, creating a comprehensive database over time. The database is password protected and access is strictly limited to those with a need-to-know. Sirius considers its customer information to be proprietary and confidential information.

18. In 2017, Jeff Rabin was Nydam's sales manager when Nydam worked for Forsythe and continued as his supervisor after Sirius' acquired Forsythe in October 2017.

19. On January 1, 2018, Jimmy Fordham and David Darden became Nydam's sales managers, taking over from Jeff Rabin.

20. On May 1, 2018, Sirius implemented a new version of its Employee Handbook.

21. The Sirius Employee Handbook contains a Confidentiality Policy at page 15 which provides as follows:

In order to perform your job duties for you may be provided Confidential Information (defined below) during the course of your employment. Without the use of the company's Confidential Information, you will not be able to perform your job duties. In order to avoid any inadvertent or other disclosure of Confidential Information, you agree that when your employment with the company ends or whenever requested, you will immediately return any and all Confidential Information of the company in your possession or control, irrespective of the form in which the information is held or maintained.

Specifically, you agree to keep secret all Confidential Information through a variety of ways including, without limitation, the training you receive, exposure to the company's clients, business practices, and the methodology and process by which it generates sales and leads for new sales.

Additionally, you agree to keep secret all Confidential Information of the company, and not to disclose this information to anyone outside of the company including, without limitation, disclosing this information to any client, account, vendor, or competitor. You will only use your knowledge of the Confidential Information in the ordinary course of your job duties and you will not disclose this information to anyone internally who does not have a need to know, nor will you disclose it to any person after your employment ends. This agreement to keep secret all Confidential Information of the company includes Confidential Information possessed by the employee in hard copy, or electronic form. However, nothing in this policy restricts the employee from utilizing the general skills and knowledge acquired by virtue of his or her employment with the company.

For purposes of this agreement "Confidential Information" includes the following types of information: client lists, lists of individual names, post office and e-mail addresses, telephone and telecopy numbers, and other pertinent contact information relating to clients or potential clients; client files; networks information; internal computer configurations; lists of contact information; vendor lists and vendor pricing and cost information; implementation methodologies; marketing plans and strategies; transactional terms and conditions; equipment costs; internal financial information; training and training programs; billing practices; compensation plans; plans for future developments; and any information of any kind that is not known generally within company industry, or any other internal documentation that is proprietary or confidential.

You understand that the information is confidential whether it is in hardcopy, on a computer database or other electronic format and even if it is not expressly identified as confidential by the company. If you have any doubt regarding whether the information is Confidential Information do not disclose it. You agree you will disclose your obligation to keep the company's Confidential Information secret to any future or prospective employers and authorize the company to take such action if it deems it necessary.

22. Sirius' Employee Handbook also contains an Information Security & Technology Resources Usage Policy at page 44, which provides as follows with respect to confidentiality:

**Data Confidentiality**

In the course of performing their jobs, company employees and contractors often have access to confidential or proprietary information, such as personal data about identifiable individuals or commercial information about business organizations. Under no circumstances is it permissible for employees or contractors to acquire access to confidential data unless such access is required by their jobs. Under no circumstances may employees or contractors disseminate any confidential information that they have rightful access to, unless such dissemination is required by their jobs. All employees are responsible to protect confidential information and as such, will ensure the appropriate information is marked as Confidential. Any violation of this policy may lead to discipline, up to and including immediate termination.

23. Sirius' Employee Handbook contains a section at page 54 entitled "Prohibited Conduct." One category of prohibited conduct identified is "Improper disclosure of confidential, proprietary or trade secret information."

24. Forsythe's Employee Handbook includes similar provisions as the Sirius provisions set out above.

25. Through the Forsythe Agreement, the Plans and Sirius' Employee Handbook, Nydam was well aware of what information constituted Sirius' confidential, proprietary and protected information and had a contractual and common law obligation not to disclose or use it for any purpose other than for the benefit of Sirius.

26. No later than May 7, 2018, Nydam obtained a copy of the compensation plan of one of Sirius' direct competitors, Presidio, and saved it to his Sirius laptop. Thereafter, on May 23, 2018, Nydam signed an offer letter from Presidio.

27. On May 31, 2018, Nydam sent his sales managers, Jimmy Fordham and David Darden, an e-mail in which he informed them that he was resigning from Sirius. Nydam

indicated that he was unhappy with the merger between Sirius and Forsythe.  He informed them that he was joining Presidio as a sales representative.

28.     Fordham then provided Nydam copies of Nydam's Service Plan with Sirius as well as the Forsythe Agreement, which was acquired through the acquisition of Forsythe and enforceable by Sirius.

29.     On or about June 4, 2018, Nydam told Fordham that he did not think he was bound by either agreement.

30.     June 5, 2018 was Nydam's last day at Sirius.  Nydam did not return any information or property to Sirius, nor did he disclose that he had Sirius information and property in his possession.

31.     Following Nydam's last day, his Sirius e-mail account was routed to Fordham so that Fordham could monitor the emails, and follow up and assist any actual prospective customers that may have contacted Nydam.

32.     For several weeks after Nydam left Sirius, Fordham received e-mails suggesting that Nydam was contacting various Sirius clients, including Vesta Corporation, a customer of Sirius with whom Nydam dealt directly during the 12 months prior to his resignation from the company.  While with Sirius, Nydam was actively pursuing at least two transactions with Vesta under "registrations" with Sirius' vendors.  IT solutions integrators like Sirius can register a client opportunity with vendors and thereby have significant product discounts available; however, the registrations are limited in time – typically 30-90 days.  Shortly after Nydam resigned from Sirius, the two registrations for Vesta expired.  Sirius attempted to renew both registrations, but was instructed Vesta would not allow Sirius to renew the registrations.  On information and belief, Sirius believes Nydam instructed Vesta to do so in order to prevent Sirius

from obtaining preferential pricing.  By doing so, Nydam disadvantaged Sirius and created an opportunity for Presidio to win the opportunities at Vesta.

33. On June 11, 1018, Sirius' in-house counsel advised Nydam by letter that he was, indeed, bound by the restrictive covenants in the Plans as well as those in the Forsythe Agreement.  Sirius advised Nydam that it believed he had already solicited Vesta Corporation in violation of the agreements, and demanded that Nydam cease and desist such violations.

34. On June 13, 2018, Sirius sent a letter to Presidio, providing notice to Presidio of Nydam's restrictive covenants.  Presidio responded by letter of July 11, 2018, asserting, among other things, that Nydam had complied with his contracts.

35. Sirius became increasingly concerned about the e-mails sent to Nydam's Sirius e-mail address by Sirius customers and vendors which suggested that Nydam was soliciting Sirius' customers, including, but not limited to, Vesta, Incomm, TECT, Fleetcor, Racetrac Petroleum, Southern Company, and Crawford and Company.  Despite Presidio's assurances that Nydam had not breached any of his contractual obligations, the e-mails indicated that Nydam was continuing to violate the restrictive covenants in the Forsythe Agreement and the Plans.  Accordingly, Sirius obtained the hard drive from Nydam's Sirius laptop and had it imaged and analyzed by a forensic consultant.

36. The forensic analysis revealed that, prior to resigning from Sirius to join Presidio, Nydam downloaded a large quantity of Sirius' information which, on information and belief, is confidential and proprietary information, to removable storage devices that remain in his possession.

37. The forensic analysis evidences that, on multiple occasions, prior to his departure from Sirius, Nydam connected flash drives to his Sirius laptop and accessed folders on the laptop

containing competitively sensitive information about Sirius' customer accounts. Nydam downloaded Sirius confidential and proprietary information after he had begun employment discussions with Presidio in May 2018. All downloads occurred prior to May 31 when Nydam informed Sirius he was resigning.

38. Sirius and Nydam's new employer, Presidio, are direct competitors. Indeed, Sirius and Presidio offer many of the same services and storage solutions, and often compete against each other for the same projects, potential clients, and within the same geographic areas.

39. As a sales representative, Nydam was provided sensitive, confidential information from the outset of his employment regarding the way Sirius conducts its business, including but not limited to, Sirius' compilation of financial information, Sirius' compilation of customer and sales information, Sirius' process of valuing, pricing, and/or formulating a proposal for a project, including what contract terms are offered to what clients, Sirius' proprietary software, and Sirius' training procedures for sales personnel. Nydam was also privy to the manner in which Sirius formulates bids for projects, compensates its employees, markets and structures its organization, and manages its customer relationships. Furthermore, Nydam was made aware of Sirius' pricing, client preferences and/or proposal history, marketing strategies, employee information, records, accounts, business methods, and overall business strategy. All of this information is confidential and proprietary and is vital to Sirius' business interests and ability to compete in the IT solutions provider industry. It would provide a significant and substantial advantage for a competitor, such as Presidio, to have or gain access to this confidential, proprietary information.

40. The integrity and enforcement of the protection of confidential information and customer relationships as well as the non-solicitation clauses contained in the Forsythe

Agreement and the Plans is of utmost importance to Sirius' business interests. Sirius would not have put Nydam in a position of trust and confidence, provided him with such confidential, proprietary data, or paid him salary, commissions and incentive awards, but for the express written promise and assurance he would not disclose confidential information or solicit customers and employees of Sirius for a period of 12 months after leaving the employ of Sirius.

41. Now employed by Presidio, Nydam has been working on and will likely continue to work on the same types of projects he did for Sirius. Nydam thus will be in a position to use Sirius' confidential and proprietary information in a manner that benefits Presidio (and to the detriment of Sirius), both with respect to client development and competitive proposals as well as through other job duties. Moreover, because Nydam's acceptance of a position with Presidio effectively puts Sirius' confidential and proprietary information, which is wrongfully in his possession, at the disposal of a competitor, Sirius faces imminent risk of significant and irreparable harm.

42. Since resigning from Sirius, Nydam has actively competed against Sirius at customer accounts he is prohibited from soliciting under the terms of the Forsythe Agreement and Plans. On information and belief, Sirius has, and certainly will, lose market share with these customers due to Nydam's conduct. On information and belief, Nydam has completed transactions on behalf of Presidio with Sirius' customers which would have resulted in net profits to Sirius in excess of $75,000.

## V.
## CLAIMS

**Count One:  Breach of Contract**

43. Sirius hereby incorporates by reference the allegations contained in paragraphs through 42 above.

44. Ancillary to and as a condition of his employment, Nydam agreed and promised, among other things, not to solicit Sirius' customers and employees and to not disclose or use Sirius' confidential and proprietary information except for the benefit of Sirius.

45. The express purpose of the non-solicitation and nondisclosure covenants within the Plans was (and is) to protect Sirius' considerable investment in the business goodwill of its customers and employees, and its acquisition of confidential and proprietary information. In consideration for the above promises and obligations, Sirius gave Nydam confidential and proprietary information belonging to Sirius.

46. In soliciting clients of Sirius with whom he worked while at Sirius, Nydam has blatantly breached and may continue to breach the terms of his Letter Agreement, the Plans and the Forsythe Agreement.

47. Further, prior to his resignation, Nydam downloaded Sirius' confidential, proprietary and trade secret information, and, on information and belief, he used Sirius' confidential and proprietary information to solicit Vesta Corporation and other Sirius customers.

48. If Nydam is allowed to continue such solicitations of customers, it is probable he will continue to breach his restrictive covenants by, using Sirius' highly confidential and proprietary information, including pricing, customer lists, proprietary software, proprietary systems, marketing strategies, contract terms, employee information, records, accounts, business methods, business model, financial data, and technical processes) which he misappropriated for personal gain and soliciting, diverting away, and taking away businesses that are customers of Sirius.

49. Nydam's breaches have caused and will continue to cause Sirius irreparable harm for which there exists no adequate remedy at law. Unless Nydam is enjoined, Sirius will

continue to suffer irreparable harm. Moreover, such continuing wrongful conduct will cause Sirius substantial damages in an amount in excess of the minimum jurisdictional limits of the Court.

50. As a result of the foregoing, Sirius, through a separate application filed with the Court, will seek a preliminary injunction, and, ultimately, a permanent injunction, actual damages, and punitive damages. The Plans and the Forsythe Agreement specifically provide for the injunctive relief sought. Because Nydam's breaches to date have been willful and intentional, Sirius is entitled to recover punitive damages as well. Sirius also seeks damages for any lost revenue and business opportunities resulting from Nydam's solicitation of Sirius' customers.

**Count Two: Breach of Fiduciary Duty, Duty of Confidentiality and Duty of Loyalty**

51. Sirius hereby incorporates by reference the allegations contained in paragraphs 1 through 42 above.

52. As an employee of Sirius, and as an express part of the Plans, Nydam owed fiduciary duties to Sirius, including the duty of loyalty, the duty not to divert business away from Sirius, and the duty to maintain in confidence all confidential and trade secret information. Nydam breached these foregoing duties by downloading Sirius' confidential and proprietary information while still an employee of Sirius, and then using it to solicit customers for his new employer.

53. If Nydam is allowed to continue such solicitations of customers, it is probable he will continue to breach his restrictive covenants by, using Sirius' highly confidential and proprietary information, including pricing, customer lists, proprietary software, proprietary systems, marketing strategies, contract terms, employee information, records, accounts, business

methods, business model, financial data, and technical processes which he misappropriated for personal gain and soliciting, diverting away, and taking away businesses that are customers of Sirius.

54. Nydam's breaches have caused and will continue to cause Sirius irreparable harm for which there exists no adequate remedy at law. As a result of the foregoing, Sirius, through a separate application filed with the Court, will seek a preliminary injunction, and, ultimately, a permanent injunction, actual damages, and punitive damages. The Plans incorporated into the Letter Agreement and the Forsythe Agreement specifically provide for the injunctive relief sought, and because Nydam's breaches to date have been willful and intentional, Sirius is entitled to recover punitive damages as well. Sirius also seeks damages for any lost revenue and business opportunities resulting from Nydam' solicitation of Sirius' customers.

**Count Three: Tortious Interference With Contractual Relations and/or Prospective Relations**

55. Sirius hereby incorporates by reference the allegations contained in paragraphs 1 through 42 above.

56. Tortious interference with contractual relations under Delaware law requires (1) a valid contract; (2) about which the defendant knew; (3) an intentional act that is a significant factor in causing the breach of such contract; (4) without justification; (5) which causes injury.

57. Tortious interference with prospective business relations under Delaware law requires (1) a reasonable probability of a business opportunity; (2) intentional interference by defendant with that opportunity; (3) proximate causation; and (4) damages.

58. Nydam was aware of Sirius' expectancies and prospective business advantage with respect to its customers. Nydam willfully and intentionally interfered, without privilege, justification or authorization, with Sirius' existing contractual and ongoing business relationships

with its customers. On information and belief, with respect to Vesta, Nydam requested the customer not allow Sirius to renew its registrations with vendors so Sirius would no longer be in position to offer Vesta the best available pricing. By eliminating the vendor discounts Sirius earned through the registration process, Nydam could then position the Vesta opportunities for his new employer, Presidio, armed with Sirius' pricing information and strategy.

59. Sirius' contractual and prospective business relationships were well known to Nydam. Nydam's solicitations were not justified and constitute breaches of his restrictive covenants.

60. On information and belief, Nydam has been competing against Sirius in the marketplace by using the protected information he misappropriated from Sirius, not by fair and lawful competition.

61. Nydam's tortious interference has directly and proximately caused, and unless enjoined, will continue to cause Sirius irreparable harm for which there exists no adequate remedy at law. Unless Nydam is enjoined, Sirius will continue to suffer irreparable harm.

62. Such wrongful conduct will cause Sirius substantial damages in an amount in excess of the minimum jurisdictional limits of the Court. Moreover, because Defendant's conduct was willful and intentional, Sirius is entitled to recover punitive damages.

63. As a result of the foregoing, Sirius, through a separate application filed with the Court, will seek a preliminary injunction, and, ultimately, a permanent injunction, actual damages, and punitive damages.

**Count Four: Conversion**

64. Sirius hereby incorporates by reference the allegations contained in paragraphs 1 through 42 above.

65. In the weeks before his departure from employment with Sirius, Nydam downloaded Sirius confidential and proprietary information on two flash drives. He thereby misappropriated and converted to his own use protected information of Sirius.

66. As a result of Nydam's wrongful, willful and malicious conversion of Sirius' property, Sirius has suffered harm and seeks its actual and exemplary damages.

**Count Five: Attorney's Fees**

67. Sirius hereby incorporates by reference the allegations contained in paragraphs 1 through 42 above.

68. As a result of Nydam's breach of contract and his willful and malicious misappropriation of Sirius' protected information, Sirius was required to employ the law firm of Schmoyer Reinhard LLP to initiate this action. Sirius seeks its reasonable and necessary attorney's fees and costs incurred in the prosecution of this matter. Attorney's fees are also authorized for breach of contract.

## VI.
## CONDITIONS PRECEDENT

69. All conditions precedent to Sirius' claims for relief have been performed or have occurred.

## VII.
## JURY DEMAND

70. Sirius hereby demands a trial by jury and files the appropriate fee with this Complaint.

## VIII.
## EXEMPLARY DAMAGES

71.     Because Sirius has been injured by Nydam's malicious, willful, and intentional conduct, Sirius is entitled to exemplary damages under Delaware law.

## IX.
## REQUEST FOR RELIEF

In light of the foregoing, Sirius requests that Sirius's application for injunctive relief, to be filed separately from this complaint, be granted, and that, upon hearing, judgment be entered in favor of Sirius, and against Defendant Nydam, for a permanent injunction, actual damages, pre-judgment and post-judgment interest, reasonable and necessary attorney's fees, court costs, punitive damages, and such other and further relief to which Sirius may be entitled.

Respectfully submitted,

SCHMOYER REINHARD LLP
17806 IH 10 West, Suite 400
San Antonio, Texas 78257
Telephone:    210/447-8033
Facsimile:    210/447-8036

Christine E. Reinhard
State Bar No. 24013389
creinhard@sr-llp.com
Annalyn G. Smith
State Bar No. 18532500
asmith@sr-llp.com

**ATTORNEYS FOR PLAINTIFF
SIRIUS COMPUTER SOLUTIONS, INC.**